IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| KERRY W. and N.W.,<br><br>Plaintiffs,<br><br><br><br>vs.<br><br><br><br>ANTHEM BLUE CROSS AND BLUE SHIELD,<br><br>Defendant. | MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' SECOND CAUSE OF ACTION<br><br><br><br><br><br>Case No. 2:19cv67<br>Judge Dee Benson |

This matter is before the Court on Defendant's Motion to Dismiss Plaintiffs' Second Cause of Action, alleging a violation of the Mental Health Parity and Addiction Equality Act, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

**FACTUAL BACKGROUND**

The following facts are taken from Plaintiffs' Complaint and are viewed in the light most favorable to Plaintiffs as the non-moving party.

Kerry W. is the mother of N.W. Both Kerry W. and N.W. were beneficiaries of a group health plan insured by Anthem. (Compl. ¶¶ 1, 3.) For many years N.W. has struggled with

1

mental heath issues and substance abuse. (*Id.* ¶¶ 9-24.)

Elevations Residential Treatment Center is a licenced facility that provides sub-acute inpatient treatment to adolescents with mental health, behavioral, and substance abuse problems. (*Id.* ¶ 4.) N.W. was admitted to Elevations on September 14, 2015 through August 25, 2016, and then again on October 5, 2016 through January 23, 2017. (*Id.*)

Anthem initially approved and paid for the first 4½ months of N.W.'s treatment at Elevations. However, Anthem denied payment for treatment after February 1, 2016, because Anthem determined that N.W. did not meet the "medically necessary" criteria. (Compl. ¶ 26.) In a letter dated February 5, 2016, Anthem provided the following justification for the denial: "The information we have shows you are no longer harming yourself, you are able to control your behavior and you no longer need 24 hour structured care. For this reason, the request for you to remain in residential treatment is denied as not medically necessary." (*Id.*)

Thereafter, Kerry filed the permissible pre-litigation appeals regarding Anthem's denial of N.W.'s treatment.[1] Kerry provided letters and medical records in support of her position that N.W. met the medical necessity criteria for continued residential treatment, and Kerry argued, among other things, that: (1)Anthem acted improperly in considering only N.W.'s mental health issues given that N.W. had a "dual diagnosis" of mental health disorders and substance abuse issues; (2) N.W. met the plan's definition for "medical necessity"; and (3) Anthem's denial letters did not sufficiently explain Anthem's rationale because the letters failed to address

---

[1] Kerry W. also requested and received an independent treatment evaluation by an external review agency. (Compl. ¶ 37.) The external review agency upheld the Plan's denial of payment for N.W.'s treatment. (*Id.* ¶ 42.)

N.W.'s dual diagnosis and failed to counter the medical records she provided. (*Id.* ¶¶ 27-47.) Kerry also requested that Anthem provide her with a copy of all governing plan documents, including the mental health criteria and the skilled nursing and rehabilitation facility criteria. (*Id.* ¶ 46.)

Throughout the appeals process, Anthem maintained and upheld the denial of N.W.'s treatment on the same grounds. (*Id.* ¶ 48.) Additionally, Anthem failed to provide Kerry with the requested plan documents. (*Id.* ¶ 49.)

Having exhausted the pre-litigation appeal obligations under the Plan and ERISA, Plaintiffs filed the Complaint in this case, setting forth two causes of action. In the First Cause of Action, Plaintiffs assert a "Claim for Recovery of Benefits," pursuant to ERISA, 29 U.S.C. § 1132(a)(1)(B), for the days that Anthem did not cover N.W.'s treatment at Elevations. Plaintiffs' Second Cause of Action asserts a Claim for Violation of the Mental Health Parity and Addiction Equity Act, pursuant to 29 U.S.C. § 1185a(a)(3)(A)(ii), 29 U.S.C. § 1132(a)(3), asserting generally that the Plain provides less generous coverage for treatment of mental health and substance abuse disorders than it provides for the treatment of medical and surgical disorders. (Compl. at pp. 13-14.)

In the motion now before the Court, Defendant moves to dismiss Plaintiffs' Second Cause of Action – the MHPAEA claim – pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## **MOTION TO DISMISS STANDARD**

In considering a motion to dismiss pursuant to Rule 12(b)(6), all well-pleaded factual

3

allegations, as distinguished from conclusory allegations, are accepted as true and viewed in the light most favorable to Plaintiffs as the non-moving party. *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997). Plaintiff must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557) (alteration in original). Accordingly, this Court's role "is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient." *Miller v. Glanz*, 948 F.2d 1526, 1565 (10th Cir. 1991). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679.

## **MENTAL HEALTH PARITY AND ADDICTION EQUALITY ACT**

As explained above, Defendant moves this court to dismiss Plaintiffs' Second Cause of Action which is based on the Mental Health Parity and Addiction Equality Act.

"Put simply, [the MHPAEA] prohibits the imposition of more stringent treatment limitations for mental health treatment than for medical treatment." *Bushnell v. UnitedHealth Group, Inc.*, 2018 WL 1578167, *4 (S.D.N.Y. Mar. 27, 2018). The statute requires that if a health plan provides "both medical and surgical benefits and mental health or substance abuse

4

disorder benefits," then the plan must ensure that (1) "the treatment limitations applicable to such mental health or substance use disorder benefits are no more restrictive than the predominant treatment limitations applied to substantially all medical and surgical benefits covered by the plan (or coverage)"; and (2) "there are no separate treatment limitations that are applicable only with respect to mental health or substance use disorder benefits." 29 U.S.C. § 1185a(a)(3)(A)(ii).

Treatment limitations under the MHPAEA can be quantitative or nonquantitative. 29 C. F. R. § 2590.7212(a). Quantitative limitations include, for example, a limitation on the number of outpatient visits that an insurance plan will cover. *Id.* Nonquantitative limitations include "restrictions based on geographic locations, facility type, provider specialty, and other criteria that limit the scope or duration of benefits for services provided under the plan or coverage." *Id.* § 2590.712(c)(4)(ii)(H).

With regard to nonquantitative limitations, the regulations provide:

> [a group health plan may not] impose a nonquantitative treatment limitation with respect to mental health or substance use disorder benefits in any classification, unless . . . any processes, strategies, evidentiary standards, or other factors used in applying the nonquantitative limitation . . . are comparable to, and are applied no more stringently than, the processes, strategies, evidentiary standards, or other factors used in applying the limitation with respect to medical/surgical benefits.

*Id.* § 2590.712( c)(4)(I).

A plaintiff may allege an impermissible mental-health exclusion or limitation based on the express terms of the plan (a "facial" challenge) or based on the plan administrator's application of the plan ("as-applied" challenge). *See Anne M. v. United Behavioral Health,* Case No. 2:18-CV-808-TS, Slip Copy, 2019 WL 1989644, *2 (D. Utah May 6, 2019).

5

**DISCUSSION**

In this case, Defendant argues that the Court should grant its Motion to Dismiss Plaintiffs' Second Cause of Action because Plaintiffs' MHPAEA allegations are "woefully inadequate." (Dkt. 17, Def.'s Reply at 6.) Defendant claims that the paragraphs alleging what Defendant did to violate the MHPAEA simply recite the applicable regulations, and then assert, in general and conclusory terms, that Defendant did what the regulations prohibit. (*Id.*) Paragraphs 60 and 61 of Plaintiffs' Complaint state:

> 60. Comparable benefits offered by the Plan for medical/surgical treatment analogous to the benefits the Plan excluded for N.'s treatment include sub-acute inpatient treatment settings such as skilled nursing facilities, inpatient hospice care, and rehabilitation facilities. For none of these types of treatment does Anthem exclude or restrict coverage of medical/surgical conditions based on medical necessity, geographic location, facility type, provider specialty, or other criteria in the manner Anthem excluded coverage of treatment for N. at Elevations.
>
> 61. In this manner, the Defendant violates 29 C.F.R. § 2590.712(c)(4)(I) because the terms of the Plan and the medical necessity criteria utilized by the Plan and Anthem, as written or in operation, use processes, strategies, standards, or other factors to limit coverage for mental health or substance abuse disorder treatment in a way that is inconsistent with, and more stringently applied, than the processes, strategies, standards or other factors used to limit coverage for medical/surgical treatment in the same classification.

(Compl. ¶¶ 60, 61.)[2]

According to Defendant, "Plaintiffs recognize that their claim relies upon some nonquantitative treatment limitation imposed by Anthem, but what that limitation is and how Anthem violated MHPAEA is []unclear, is not sufficiently alleged, and fails as a matter of law." (Dkt. 17, Def.'s Reply at 3.)

---

[2] Paragraph 60 tracks the language of 29 C.F.R. § 2590.712(c)(4)(ii)(H) and paragraph 61 recites the language of 29 C.F.R. § 2590.712(c)(4)(i).

Plaintiffs respond that the Court should deny Defendant's motion because Defendant's argument is limited to "two paragraphs of a 63 paragraph complaint." (*Id.* at 3.) Plaintiffs expressly acknowledge that "to plead a MHPAEA violation [they] need to identify a treatment limitation, either quantitative or nonquantitative . . . that is more restrictive for mental-health treatment than it is for medical treatment." (Dkt. 14, Pls.' Opp'n at 4, citation omitted.) And Plaintiffs assert that, when "[r]ead as a whole, the Complaint contains numerous paragraphs that support the conclusion that Anthem violated MHPAEA's parity requirement." (*Id.* at 3.)

In support, Plaintiffs direct the Court to the "Background Facts" in the Complaint, wherein Plaintiffs allege, among other things, that Anthem committed numerous errors in its decision to pay for approximately 4½ months of N.W.'s residential treatment and deny the rest. For example, Plaintiffs allege:

- Anthem failed to consider or give proper weight to N.W.'s "dual diagnosis" of mental health and substance abuse issues (Compl. ¶ 27);

- Even though Anthem acknowledged that N.W. met the definition of medical necessity when it initially approved N.W.'s stay at Elevations, Anthem failed to conclude that N.W. also met the continued stay criteria (*Id.* ¶ 28);

- Anthem *continued* to ignore N.W.'s dual diagnosis in subsequent reviews and appeals (*Id.* ¶ 37);

- Anthem's denial letters failed to address the concerns and issues raised in the appeal (including N.W.'s dual diagnosis and the perceived lack of viable treatment options nearby), failed to address the medical records submitted in support of the appeal, and failed to sufficiently explain its rationale, "essentially re-us[ing]" the initial denial letter (*Id.* ¶¶ 29, 38); and

- Anthem's conclusions that N.W. was "no longer at risk for serious harm that needed 24-hour care," and did not meet the "continued stay criteria" was contradicted by the medical records (*Id.* ¶¶ 35, 41, 47).

(*See generally* Compl. ¶¶ 26 - 48.)

Plaintiffs assert: "The allegations of the Complaint demonstrate that Anthem's actions, in operation, imposed a treatment limitation on mental health and substance abuse benefits that are [sic] more restrictive than the treatment limitations the Plan imposes on medical/surgical benefits." (Dkt. 14, Pls.' Opp'n at 5.)

Having reviewed the Complaint in its entirety, the Court concludes that Plaintiffs have failed to state a claim under the MHPAEA. Although Plaintiffs have alleged specific facts suggesting that Anthem committed errors during the claims and appeals process,[3] these allegations do not support Plaintiffs' MHPAEA claim because they do not relate to an analogous treatment in the medical or surgical setting.[4] As Defendant points out, "Plaintiffs can argue at length about how Anthem's decision making was *wrong* and handling of the appeals was erroneous, but unless Plaintiffs can identify a treatment limitation and make some *comparison* to Anthem's decision-making process in the context of a claim for inpatient rehabilitation or at a skilled nursing facility in alleging an 'as-applied' challenge under the MHPAEA, Plaintiffs'

---

[3] Defendant asserts that these allegations and attacks "go to the heart of [Plaintiffs'] ERISA claim for benefits – *not* the MPHAEA claim. (Dkt. 17, Def.'s Reply at 4.) "Plaintiffs are trying to persuade the Court that they have properly pleaded a MHPAEA claim by relying on allegations in the Complaint that support their *First* Cause of Action for benefits under ERISA, *see* 29 U.S.C. § 1132(a)(1)(B)." (*Id.* at 3.)

[4] The only allegation in the background facts section of the Complaint that relates in any way to skilled nursing facilities or inpatient rehabilitation is the claim that Plaintiffs requested copies of all the plan documents including "a copy of its skilled nursing and rehabilitation facility criteria," (Compl. ¶ 46), and that Defendant did not provide this information, (*Id.* ¶ 49). However, a failure to provide requested information does not support a MHPAEA violation, but rather a potential claim for statutory penalties under ERISA. 29 U.S.C. § 1024(b)(4) & § 1132(c).

allegations lend no support to a MHPAEA claim." (Def.'s Reply at 5 (emphasis in original).)

Aside from legal conclusions, Plaintiffs' Complaint fails to provide a sufficient factual basis in support of their claim that there was disparate treatment in the way Defendant handled, processed, or evaluated N.W.'s claim for treatment at Elevations in comparison to the way Defendant handles, processes, or evaluates claims for treatment at skilled nursing facilities and inpatient rehabilitation facilities.

Other courts, when presented with similarly sparse and conclusory allegations, have likewise dismissed MHPAEA claims. For example, in the recent case of *Anne M. v. United Behavioral Health*, Case No. 2:18-CV-808-TS, Slip Copy, 2019 WL 1989644 (D. Utah May 6, 2019), the parents of minor child E. were repeatedly denied benefits for E.'s 2-year treatment at a residential mental health facility. *Id.* at *1. Thereafter, E. and her parents brought suit in federal court asserting that E.'s residential treatment should have been covered. Like the instant case, the plaintiffs in *Anne M.* presented the same two causes of action: (1) under ERISA, 29 U.S.C. § 1132(a)(1)(B), to recover benefits under the plan; and (2) under the Mental Health Parity and Addiction Equality Act. *Id.* Additionally, the defendant moved to dismiss the MHPAEA claim pursuant to Rule 12(b)(6) for failure to state a claim.

Plaintiffs in *Anne M.* argued that the claims administrator failed to provide mental health coverage at parity with comparable intermediate medical benefits offered by the plan. *Id.* at *3. Specifically, plaintiffs alleged that the administrator "denied benefits to E. applying the Plan's medical necessity criterial for mental health disorders in a more stringent way that it applies medical necessity criteria for medical/surgical disorders." *Id.* The district court found these

allegations to be "merely conclusory" and that the plaintiffs had "fail[ed] to adequately allege[] facts to support their claim that [the administrator] applied less rigorous standards when evaluating analogous medical/surgical claims." *Id.* Accordingly, the court granted defendant's motion to dismiss plaintiffs' MHPAEA claim. *Id.*

## **CONCLUSION**

Defendant's motion is GRANTED and Plaintiffs' Second Cause of Action is DISMISSED.

DATED this 5th day of June, 2019.

_____
Dee Benson
United States District Judge