IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| KERRY W. and N.W., <br><br> Plaintiffs, <br> v. <br><br> ANTHEM BLUE CROSS AND BLUE SHIELD, <br><br> Defendant. | **MEMORANDUM DECISION AND ORDER** <br><br> Case No. 2:19-cv-67 <br><br> District Judge Dee Benson |

Before the court are Plaintiffs' and Defendant's cross-motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Dkt. No. 30, Dkt. No. 31. The motions have been fully briefed by the parties, and the court has considered the facts and arguments set forth in those filings. The court elects to determine the motion on the basis of the written memoranda and finds that oral argument would not be helpful or necessary. DUCivR 7-1(f).

## **BACKGROUND**

At all relevant times beginning January 1, 2016, Plaintiff Kerry W. was a participant in a fully-insured employee welfare benefits plan ("the Plan") under 29 U.S.C. § 1001 *et. seq.* ("ERISA"), and her son, Plaintiff N.W. ("Nate"), was a beneficiary of that plan. Dkt. No. 31 at 4. Defendant Anthem Blue Cross and Blue Shield ("Anthem") acted as the insurer and claims administrator for the Plan. Dkt. No. 30 at 2.

Anthem's benefit booklet ("Booklet") explains that the Plan covers services that are "medically necessary." Rec. 1684.[1] The Booklet contains the following definition:

> **Medically Necessary**: The diagnosis, evaluation and treatment of a condition, illness, disease or injury that We[2] solely decide to be:
> - Medically appropriate for and consistent with Your symptoms and proper diagnosis or treatment of Your condition, illness, disease or injury;
> - Obtained from a Doctor or Provider;
> - Provided in line with medical or professional standards;
> - Known to be effective, as proven by scientific evidence, in improving health;
> - The most appropriate supply, setting or level of service that can safely be provided to You and which cannot be omitted. It will need to be consistent with recognized professional standards of care. In the case of a Hospital stay, also means that safe and adequate care could not be obtained as an outpatient;
> - Cost-effective compared to alternative interventions, including no intervention. Cost effective does not always mean lowest cost. It does mean that as to the diagnosis or treatment of Your illness, injury or disease, the service is: (1) not more costly than an alternative service or sequence of services that is medically appropriate, or (2) the service is performed in the least costly setting that is medically appropriate;
> - Not Experimental or Investigational;
> - Not primarily for You, Your families, or Your Provider's convenience; and
> - Not otherwise an exclusion under this Booklet.

Rec. 1756. The Booklet further states, "The fact that a Provider may prescribe, order, recommend or approve a service, treatment, or supply does not make it Medically Necessary and does not guarantee payment from Us." Rec. 1689.

In the Booklet, Anthem claims the ability to "determine how benefits will be managed and who is eligible," to make the final determination on any questions that arise under the Booklet, and to make the final determination on "whether the services, care, treatment, or supplies are Medically Necessary." Rec. 1673. The Booklet states that Anthem "may decide that a service that was prescribed or asked for is not Medically Necessary" if certain steps are not

---

[1] All references denoted "Rec." refer to pages in the administrative record, which was submitted in the form of 33 attachments to ECF Dkt. No. 28 and numbered from 1 to 3121.

[2] The Booklet provides that "Our", "We" and "Us" refer to Anthem. Rec. 1671.

2

taken. Rec. 1684. The Booklet also states that Anthem will use its own "clinical coverage guidelines . . . to help make Our Medical Necessity decisions" and it will "administer benefits for any Medically Necessary determination, as decided solely by [Anthem]." Rec. 1685. Regarding the specific treatment at issue here, the Booklet explains that the Plan's "covered services" include "**Residential Treatment** which is specialized 24-hour treatment in a licensed Residential Treatment Center." Rec 1700.

**Nate's Background and Treatment**

Starting in elementary school, Nate exhibited behavioral challenges that prompted Kerry to enroll him in therapy. Dkt. No. 31 at 6. By the time he was in high school, he was skipping and failing his classes. *Id.* at 7. He habitually used drugs, beginning with marijuana and eventually moving to LSD, ketamine, cocaine, and opiates. *Id.* at 7-9. He exhibited violent and unlawful behavior, sometimes under the influence of drugs. *Id.* at 7-8. Kerry's repeated attempts to secure treatment for Nate at a residential treatment center (RTC) in Colorado were unsuccessful, and his longtime therapist determined she could no longer provide effective outpatient treatment for Nate. *Id.* at 8. After Nate took a bus to a bridge with the intention of committing suicide (but was able to stop himself), Kerry attempted to re-enroll Nate in the Colorado RTC. *Id*. at 9. Nate ran away after four days of treatment and was found by police the day after his escape. *Id.* Kerry then enrolled Nate in Elevations Residential Treatment Center ("Elevations") in Utah. *Id.*

Nate received treatment at Elevations from September 14, 2015 through August 25, 2016 and again from October 5, 2016 through January 23, 2017. Dkt. No. 30 at 5. Kerry submitted claims to Anthem for all of Nate's treatment at Elevations from January 1, 2016 until his discharge in January, 2017. Dkt. No. 31 at 10-15. In total, Nate spent roughly 66 weeks at

3

Elevations, 16 of which took place before Anthem was Nate's insurer. Dkt. No. 39 at 2. Of the 50 weeks of Nate's stay for which Anthem was the insurer, Anthem agreed to pay for less than eight. Dkt. No. 31 at 9, 14.

During Nate's first stay at Elevations, Anthem sent a letter to Elevations denying payment for Nate's treatment from February 2, 2016 forward. Dkt. No. 30 at 6. The letter, authored by Dr. Abe Soliman, outlined the criteria used by Anthem to determine when "short-term residential treatment" is medically necessary. Rec. 2441-42. It then gave Anthem's rationale for denying coverage: "The information we have shows you are no longer harming yourself, you are able to control your behavior and you no longer need 24 hour structured care. For this reason, the request for you to remain in residential treatment is denied as not medically necessary." *Id.*

On August 3, 2016, Kerry appealed Anthem's denial of coverage. Dkt. No. 30 at 7. She argued in her appeal that continued treatment was medically necessary as evidenced by therapy notes, medical records from Elevations, and letters from individuals who had treated Nate. *Id.* Anthem reviewed the appeal and upheld the initial denial in a letter dated September 2, 2016. *Id.* A letter from Dr. Nancy Stebbins stated that Anthem had reviewed all the information that was included in the appeal. *Id.* at 8. It gave the following rationale for upholding the initial denial: "After the treatment you [Nate] had, you were no longer at risk for serious harm that needed 24 hour care. You could have been treated with outpatient services." *Id.*

Kerry requested an external review of Anthem's decision, and Medical Consultants Network, Inc. ("MCN") was assigned to review the case. Dkt. No. 30 at 25. On March 3, 2017, MCN sent Anthem its report. Rec. 2384. MCN identified all documents evaluated as part of its

review, including the medical records and letters Kerry had sent in her appeal. Rec. 2386-87.

MCN upheld Anthem's denial of benefits beyond February 2 and gave the following rationale:

> FINDINGS/PRINCIPAL REASON FOR DECISION
>
> Patient had shown significant improvement and achieved maximum benefit from this level of care. He had reached a baseline status and there was no reasonable expectation that his condition would further improve with continued treatment at this level of care. He was not suicidal, homicidal, or gravely impaired to care for self. There is no evidence in the submitted medical records to indicate that he requires 24-hour nursing supervision.

Rec. 2387; *see also* Rec. 2386 (same language). The report stated that Plaintiffs' administrative appeals were exhausted on this claim. Rec. 2389.

Nate ran away from Elevations in August 2016, and Elevations discharged Nate at that time. Dkt. No. 31 at 14. Kerry returned Nate to Elevations with Anthem's approval on October 5, 2016. Dkt. No 30 at 10. While his admission was first approved by Anthem for seven days, Anthem granted extensions of coverage until October 25, 2016 (21 days total). Rec. 2465. Anthem declined coverage from October 26 forward. Rec. 2472. In a letter from Dr. Alison Baker dated October 28, 2016, Anthem gave the following rationale for declining coverage: "The information we have tells us progress toward treatment goals is not occurring because you are not positively participating in the program and cooperating with your treatment plan. For this reason, the request for you to remain in residential treatment is denied as not medically necessary." *Id.*

Kerry appealed this denial of benefits on April 25, 2017 and included updated medical records for Nate with multiple diagnoses of mental health and substance abuse disorders. Dkt. No. 31 at 15-16. In a letter from Dr. Nancy Stebbins dated May 30, 2017, Anthem upheld its denial of benefits and gave the following rationale:

> After the treatment you had, you were no longer at risk for serious harm that needed 24 hour care. More progress toward treatment goals was not occurring because you were not

5

positively participating in the program and cooperating with your treatment plan. You could have been treated with outpatient services.

Rec. 1507. Having exhausted their internal appeals, Plaintiffs filed this suit on January 30, 2019. Dkt. No. 2.

## **DISCUSSION**

Federal Rule of Civil Procedure 56 permits the entry of summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The court must "examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment." *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.,* 912 F.2d 1238, 1241 (10th Cir. 1990). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient [to overcome a motion for summary judgment]; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

The cross-motions in this case present two main questions: First, should Anthem's decision to decline coverage for Nate's treatment be reviewed *de novo* or under an "arbitrary and capricious" standard? Second, was Anthem's decision to decline coverage appropriate under the applicable standard of review?

**Standard of Review**

In ERISA cases, "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."

6

*Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 102 (1989).  "Where the plan gives the administrator discretionary authority, however, 'we employ a deferential standard of review, asking only whether the denial of benefits was arbitrary and capricious.'" *Eugene S. v. Horizon Blue Cross Blue Shield of New Jersey*, 663 F.3d 1124, 1130 (10th Cir. 2011) (quoting *LaAsmar v. Phelps Dodge Corp. Life, Accidental Death & Dismemberment & Dependent Life Ins. Plan*, 605 F.3d 789, 796 (10th Cir. 2010)).

The Tenth Circuit "[has] been comparatively liberal in construing language to trigger the more deferential standard of review under ERISA." *Nance v. Sun Life Assurance Co. of Canada*, 294 F.3d 1263, 1268 (10th Cir.2002) (collecting cases).  It has "found arbitrary and capricious review appropriate where plan language defines 'needed' services as those determined by the plan administrator to meet certain tests, *McGraw v. Prudential Ins. Co. of Am.*, 137 F.3d 1253, 1256 (10th Cir.1998), or where plan language entitles the plan administrator to label a procedure 'experimental,' *Chambers v. Family Health Plan Corp.*, 100 F.3d 818, 825 (10th Cir.1996)." *Eugene S.*, 663 F.3d at 1132.  In *Eugene S.*, the Tenth Circuit examined a plan that "limit[ed] 'Medically Necessary and Appropriate' services or supplies to those 'determined by [the insurer's] director or designee(s)' to be such." *Id.*  The plan "clarifie[d] that a prescription, order, recommendation, or approval from a practitioner does not, without Horizon's approval, make a supply or service 'medically necessary.'" *Id.*  The plan also reiterated that "'[the insurer] determines what is medically necessary and appropriate' under its Utilization Review and Management program." *Id.*  Based on these and similar provisions, the Tenth Circuit held that the insurer's decision was entitled to deferential review. *Id.*

Here, the Booklet provides that Anthem "solely decide[s]" whether a treatment or service is medically necessary.  Rec. 1756.  It further states, "The fact that a Provider may prescribe,

7

order, recommend or approve a service, treatment, or supply does not make it Medically Necessary," echoing the language in *Eugene S.* Rec. 1689. It specifies that Anthem "may decide that a service that was prescribed or asked for is not Medically Necessary" if certain steps are not taken. Rec. 1684. The Booklet also states that Anthem will use its own "clinical coverage guidelines . . . to help make *Our* Medical Necessity decisions" and it will "administer benefits for any Medically Necessary determination, *as decided solely by [Anthem]*." Rec. 1685, (emphasis added). Although Plaintiff attempts to distinguish this language from other portions of the Booklet where the word "discretion" is used, the Tenth Circuit does not require "any magic words, such as 'discretion,' 'deference,' 'construe' or 'interpret' in order to find discretionary authority." *Gust v. Coleman Co.*, 740 F.Supp. 1544, 1550 (D.Kan.1990), *aff'd*, 936 F.2d 583 (10th Cir. 1991). The Plan language is sufficient to give Anthem deferential review under Tenth Circuit precedent.

Plaintiffs argue next that even if the Plan language affords Anthem arbitrary and capricious review, Anthem should not be afforded deference because it failed to strictly comply with federal ERISA regulations concerning internal claims, internal appeals, and external review processes. Dkt. No. 31 at 18-19. Plaintiffs argue that this Court should adopt the Second Circuit's test in *Halo*, under which the plan administrator "must strictly adhere to the regulation to obtain the more deferential arbitrary and capricious standard of review." *Halo v. Yale Health Plan, Dir. of Benefits & Records Yale Univ.*, 819 F.3d 42, 56 (2d Cir. 2016). But the Tenth Circuit has had multiple opportunities to adopt the *Halo* standard and has thus far declined to do so. *See, e.g.*, *Mary D. v. Anthem Blue Cross Blue Shield*, 778 Fed. Appx. 580 (10th Cir. 2019). Accordingly, we do not adopt the *Halo* standard here.

8

Plaintiffs further argue that even under the "substantial compliance" standard of *Gilbertson v. Allied Signal, Inc.*, 328 F.3d 625 (10th Cir. 2004), Anthem failed to comply with ERISA requirements and should therefore be denied deference. Dkt. No. 31 at 20-22. Yet here, as in *Mary D.*, the denial letters "cited lack of medical necessity as the specific reason for each denial; they referenced the residential-treatment criteria that governed the medical-necessity determination; and they provided clinical judgment supporting each denial." 778 Fed. Appx. at 589. Plaintiff claims that the denial letters "fail to show the clinical judgment behind its decision" (Dkt. No. 46 at 8-9), but the ERISA regulations merely require "an explanation of the scientific or clinical judgment for the determination," and do not specify the requisite extent of explanation. 29 C.F.R. § 2560.503-1(g)(1)(v)(B). Here, Anthem provided explanations for each denial. The sufficiency of those explanations will be discussed below as it pertains to the second inquiry, but because Anthem has discretion over medical necessity and it substantially complied with ERISA regulations, it will be afforded deference in its medical necessity determinations. Furthermore, as explained below, the result would be the same under either standard.

**Denial of Benefits**

Under arbitrary and capricious review, a plan administrator's decision will be upheld "unless it is 'not grounded on any reasonable basis.'" *Kimber v. Thiokol Corp.*, 196 F.3d 1092, 1098 (10th Cir. 1999) (citation omitted). "An administrator's decision does not need to be the only logical decision, or even the best decision." *Gundersen v. Metropolitan Life Ins. Co.*, 2011 WL 6020575, *2 (D. Utah Dec. 1, 2011) (citing *Kimber*, 196 F.3d at 1098). The court's review of this decision "'is limited to determining whether the interpretation of the plan was reasonable and made in good faith.'" *Joseph & Gail F. v. Sinclair Servs. Co.*, 158 F. Supp. 3d 1239, 1249 (D. Utah 2016) (citing *LaAsmar v. Phelps Dodge Corp. Life, Accidental Death &*

*Dismemberment & Dependent Life Ins. Plan*, 605 F.3d 789, 796 (10th Cir. 2010)). Yet courts in the Tenth Circuit "give less deference if a plan administrator fails to gather or examine relevant evidence." *Kimber*, 196 F.3d at 1097; *see also Rekstad v. U.S. Bancorp*, 451 F.3d 1114, 1121 (10th Cir. 2006) (administrator's reliance on one-sided evidence was arbitrary and capricious).

The Tenth Circuit has found the denial of benefits arbitrary and capricious where a reviewer "failed to explain how [she] reached her conclusion" (*DeGrado v. Jefferson Pilot Financial Ins. Co.*, 451 F.3d 1161, 1175 (10th Cir. 2006)); where administrators inappropriately relied on certain evidence while disregarding other evidence presented (*Caldwell v. Life Ins. Co. of N. Am.*, 287 F.3d 1276, 1285-1286 (10th Cir. 2002)); and where an administrator's decision lacked "substantial evidence," which is "such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the decisionmaker" (*Id.* at 1282, internal citations omitted). A decision is arbitrary and capricious where it lacks "*any* analysis, let alone a reasoned analysis" and a reviewer's explanations "contain nothing more than conclusory statements." *McMillan v. AT&T Umbrella Benefit Plan No. 1*, 746 Fed. Appx. 697, 706 (10th Cir. 2018) (emphasis in original).

The denials of coverage and the subsequent reviews by Anthem and MCN contained no factual findings to support their conclusions about Nate's mental health. If Anthem or MCN did indeed "gather [and] examine relevant evidence" as required by *Kimber*, they made no reference to that evidence in their denial letters. They did not offer any responses to the diagnoses and reports included by Kerry in her appeal. They did not cite any reports by Anthem's doctors or by doctors at Elevations on which they relied in reaching their conclusions. Anthem's denials contain little more than conclusory statements such as "[y]ou could have been treated with outpatient services," or "you no longer need 24 hour structured care." The letters offer no factual

support for statements like "you are not positively participating in the program" or "you are no longer harming yourself [and] you are able to control your behavior." As in *McMillan*, these letters "lack *any* analysis, let alone a reasoned analysis." The denials include so few facts that it is impossible to determine whether the administrator's decision inappropriately relied on one-sided evidence, as in *Caldwell*. If the reviewers' conclusions were based on "substantial evidence," no such evidence is cited in the explanations they sent to Plaintiffs. The rationales offered by the reviewers fail to adequately explain their conclusions, and Anthem's denial of coverage was therefore arbitrary and capricious.

Having determined that Anthem's denial of coverage for Nate's residential treatment was arbitrary and capricious, this court may either remand the case to the plan administrator for a renewed evaluation of the case or order an award of benefits. *DeGrado*, 451 F.3d at 1175. "Which of these two remedies is proper in a given case, however, depends on the specific flaws in the plan administrator's decision." *Id.* "[W]hen an ERISA administrator fails to make adequate findings or to explain adequately the grounds of her decision," the remedy "is to remand the case to the administrator for further findings or explanation." *Caldwell*, 287 F.3d at 1288. But "if the evidence in the record clearly shows that the claimant is entitled to benefits, an order awarding such benefits is appropriate." *Spradley v. Owens-Illinois Hourly Employees Welfare Ben. Plan*, 686 F.3d 1135, 1142 (10th Cir. 2012). Here, each of the reviewers—both internal and external—failed to make adequate findings and to sufficiently explain the grounds of their decisions. Their conclusory statements about Nate's improvement or lack thereof were not supported by any concrete factual findings, and they failed to specifically address the medical information raised in Kerry's appeals. Accordingly, the case will be remanded to the administrator for further findings or explanation.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs' motion for summary judgment is GRANTED. The case is remanded to the plan administrator for a renewed evaluation of the claimant's case.

Signed this 6th day of March, 2020.

BY THE COURT

*/s/ Dee Benson*

U.S. District Judge Dee Benson